**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

TRUSTEES OF INTERNATIONAL
UNION OF PAINTERS AND ALLIED          1:17-cv-05739-NLH-KMW
TRADES DISTRICT COUNCIL 711
HEALTH & WELFARE FUND, et al.,

      Plaintiffs          **OPINION**

  v.

DANCO PAINTING, LLC,

      Defendant.

---

**APPEARANCES:**

STEVEN J. BUSHINSKY
W. DANIEL FEEHAN, III
O'BRIEN, BELLAND & BUSHINSKY, LLC
509 S. LENOLA RD.
BUILDING 6
MOORESTOWN, NJ 08057

    On behalf of *Plaintiffs*

**HILLMAN**, District Judge

    This action comes before the Court on Plaintiffs' motion for default judgment against Defendant Danco Painting, LLC.  For the reasons expressed below, Plaintiffs' motion will be granted, and judgment will be entered in their favor against Danco.

**BACKGROUND**

    Plaintiffs are a union and a group of related benefit funds and fund trustees, and include the following specific parties: Trustees of International Union of Painters and Allied Trades

District Council 711 Health & Welfare Fund ("Health Fund"),
Trustees of International Union of Painters and Allied Trades
District Council 711 Vacation Fund ("Vacation Fund"), and
Trustees of Painters District Council 711 Finishing Trades
Institute ("FTI") (collectively the "Trustees"), the employers
and employee trustees of labor-management trust funds organized
and operated pursuant to a Trust Agreement and Collective
Bargaining Agreement(s) ("CBA") in accordance with Section
302(c)(5) of the Labor Management Relations Act ("LMRA"), 29
U.S.C. § 186(c)(5); International Union of Painters and Allied
Trades District Council 711 Health & Welfare Fund, International
Union of Painters and Allied Trades District Council 711
Vacation Fund, and Painters District Council 711 Finishing
Trades Institute (collectively the "Funds"), the collecting
agents for the Trustees; and the International Union of Painters
and Allied Trades District Council 711 (the "Union").

Defendant Danco Painting, LLC is an employer and a party to
a collective bargaining agreement with the Union.  The CBA
provides that Defendant was required to make fringe benefit
contributions to the Funds for hours worked by union members.
(Docket No. 79-3, Ex. A).  According to Plaintiffs, Defendant
failed to remit those contributions.  Specifically, Defendant
failed to remit or only remitted a portion of the required
contributions for the period of January 1, 2011 to December 31,

2

2013, the period of January 1, 2014 to December 31, 2016, and the period of January 1, 2017 to April 30, 2018.  (Docket No. 49 at 6).  Plaintiffs further allege that Defendant further violated the CBA by failing to remit dues check-offs for the period of January 1, 2011 to December 31, 2013; January 1, 2014 to December 31, 2016; and January 1, 2017 to April 30, 2018. (Docket No. 49 at 8).

Plaintiffs filed their original Complaint in August 2017, alleging claims against Danco for delinquent contributions owed under the parties' CBA in violation of Section 515 of ERISA, 29 U.S.C. § 1145, pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.  (Docket No. 1).  Plaintiffs amended their complaint in February 2018 to name Hall Construction Co., Inc. ("Hall"), a general contractor for Defendant on certain projects, and Daniel D'Ambrosia, the principal shareholder of Danco, against whom Plaintiffs sought to impose personal liability, as additional defendants.  (Docket No. 9).

In its First Amended Complaint, Plaintiffs alleged that Hall breached an agreement between its president and the Union guaranteeing payment of Defendant's outstanding contributions for work performed on certain projects, as well as the implied covenant of good faith and fair dealing.  (Docket No. 9 at 11-14).  After Plaintiffs and Hall agreed to extend the latter's time to respond (Docket No. 18), Hall filed an answer on March

3

16, 2018.  (Docket No. 19).  In that answer, Hall asserted crossclaims for contractual indemnity and fraudulent misrepresentation against Defendant and D'Ambrosia and a third-party complaint for the same counts against Ginger Salata, D'Ambrosia's assistant.  However, on August 7, 2018, Plaintiffs and Hall agreed to the latter's dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  (Docket No. 29). The Court issued an Order granting Hall's dismissal on August 10, 2018.[1]  (Docket No. 30.)

After two letters from Plaintiffs' counsel detailing Defendant's failure to respond to discovery requests were filed with the Court, (Docket No. 31, Docket No. 33), Plaintiffs filed a motion for sanctions requesting costs and fees as well as default judgment against Defendant and D'Ambrosia on January 18, 2019.  (Docket No. 37 at 5).  The Court would later grant Plaintiffs' motion for attorneys' fees and award them $3,080 in fees and costs, and deny the motion for default judgment. (Docket No. 64, Docket No. 65 at 2-4).

---

[1] The parties' stipulation states that "the above-captioned action is voluntarily dismissed in accordance with the terms of the parties' Settlement Agreement, without prejudice and without costs or attorneys' fees as to Defendant, Hall Construction Co., Inc., only."  (Docket No. 30 at 1).  As Hall has made no further appearances or filings in this case since the entry of the August 10, 2017 Order dismissing Hall, the Court interprets the stipulation to encompass Hall's crossclaims and third-party complaint as well.

On February 14, 2019, Defendant's counsel filed a letter with the Court explaining that D'Ambrosia had individually filed for bankruptcy, meaning proceedings against him were automatically stayed by a Bankruptcy Court provision.  (Docket No. 40).  Shortly thereafter, on March 27, 2019, Plaintiffs filed a motion to amend its Complaint once again, (Docket No. 44), which was granted by the Court on July 2, 2019.  (Docket No. 48).  Plaintiffs' Second Amended Complaint ("SAC") dropped D'Ambrosia as a plaintiff and contains two counts alleged only against Danco: failure to remit contributions and failure to remit dues check-offs.  (Docket No. 49 at 5-8).  After the filing of the SAC, the action was reassigned from Judge Simandle to the undersigned on August 13, 2019.  Danco, now the sole remaining defendant, then filed an answer to the SAC on August 21, 2019.  (Docket No. 54).

Defendant's counsel filed a motion to withdraw from this action on December 12, 2020, (Docket No. 63), which the Court denied without prejudice.  (Docket No. 64).  After counsel filed a revised motion addressing certain deficiencies, (Docket No. 69), Magistrate Judge Karen Williams granted his motion to withdraw on March 9, 2020, ordered Defendant to obtain new counsel within 30 days, and stated that if Defendant failed to do so, Plaintiffs were free to file any motion they pleased in response. (Docket No. 71).

Defendant apparently did not obtain new counsel within that 30-day period, and after Defendant missed telephone status conferences scheduled by Judge Williams on May 12 and June 23, 2020, Plaintiffs filed a request for default against Defendant for failure to appear, plead, or otherwise defend. (Docket No. 78). The Clerk entered default as to Defendant for failure to appear on September 10, 2020. Plaintiffs then filed the presently pending motion for default judgment on February 24, 2021, which is unopposed and is now ripe for adjudication. (Docket No. 79.)

**DISCUSSION**

**I.   Subject Matter Jurisdiction**

The Court has jurisdiction over this action pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, respectively, and Section 301 of the LMRA, 29 U.S.C. § 185.

**I.   Legal Standards for Motion for Default**

A. Default

Before the Court can enter a default judgment, the Clerk must enter a default when "the party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Clerk properly entered a default against Defendant on September 10, 2020.

B. Default Judgment

The court is authorized to enter a default judgment on a plaintiff's motion against a properly served defendant who fails to file a timely responsive pleading.  Fed. R. Civ. P. 55(b)(2). Chanel v. Gordashevsky, 558 F.Supp.2d 532, 535 (D.N.J. 2008) (citing Anchorage Assocs. v. Virgin Is. Bd. Of Tax. Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  The decision to enter a default judgement is left to the discretion of the court; however, the Third Circuit has articulated its "preference that cases be disposed of on the merits whenever practicable."  Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir, 1984).

In assessing a motion for default judgment, the court should accept as true all well-pleaded factual allegations – other than those regarding damages - but is not required to accept the Plaintiffs' legal conclusions.  Dempsey v. Pistol Pete's Beef N Beer, LLC, No. 08-5454, 2009 WL 3584597, at *3 (Oct. 26, 2009).  Three factors guide whether a default judgement should be granted: (1) prejudice to the Plaintiffs if the default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to culpable conduct.  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).  However, before determining whether a Plaintiffs is entitled to default judgment, the court must first

7

review whether (1) there is sufficient proof of service, Gold
Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d
Cir.1985), and (2) the Complaint demonstrates a valid cause of
action.  Richardson v. Cascade Skating Rink, No. 19-08935, 2020
WL 7383188, at *2 (D.N.J. Dec. 16, 2020).

## II.  Motion for Default Judgment

As explained above, Plaintiffs here moved for default
judgment after Danco failed to retain substitute counsel.  The
Court first notes that the Third Circuit has held that Rule
55(a) "[b]y its very language, the 'or otherwise defend' clause
is broader than the mere failure to plead," and stated that
default judgment pursuant to Rule 55 may be imposed for actions
such as failure to comply with a court's order to retain
substitute counsel.  Hoxworth v. Blinder, Robinson & Co., 980
F.2d 912, 917-18 (3d Cir. 1992).  "Accordingly, courts have
entered default judgment as a sanction against a defendant even
where, as here, an answer has been filed."  Nike, Inc. v.
Eastern Ports Custom Brokers, Inc., No.: 2:11-cv-4390-CCC-MF,
2018 WL 3472628, at *10 (D.N.J. July 19, 2018) (citing Opta Sys.
LLC v. Daewoo Electronics Am., 483 F. Supp. 2d 400, 406 (D.N.J.
2007) and Ramada Worldwide v. SB Hotel Mgmt., No. 14-2186, 2016
WL 5030354, at *2 (D.N.J. Sept. 19, 2016)).

The Court therefore will move forward with assessing
Plaintiffs' motion for default judgment.  First, there is no

question regarding whether service was properly effectuated in
this case.  Danco actively participated in the case for several
years, before finally failing not to obtain new counsel despite
a clear Court Order and choosing to no longer continue to mount
a defense to the claims asserted against it.

Nor is there any question regarding whether Plaintiffs have
sufficiently stated legitimate claims against Danco.  As
outlined above, Plaintiffs have asserted two claims here: (1)
that Defendant failed to timely remit contributions to the funds
as required by the CBA, in violation of 29 U.S.C. § 1145, and
(2) that Defendant failed to remit dues check-offs.
Section 1145 of ERISA "requires an employer to contribute to a
multiemployer benefit plan in accordance with the 'terms and
conditions' set forth in the collective bargaining agreement."
Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.,
85 F.3d 1098, 1111 (3d Cir.1996) (citing 29 U.S.C. § 1145).
Plaintiffs here have sufficiently pled that Defendant entered
into a CBA with the union, and that it failed to remit
contributions for the periods of January 1, 2011 to December 31,
2013, January 1, 2014 to December 31, 2016, and January 1, 2017
to April 30, 2018, and further failed to remit dues check-offs
as required by the CBA.  Assuming Plaintiffs' allegations to be
true, the Court easily finds that Plaintiffs have stated a
legitimate claim against Danco.  International Union of Painters

v. Mazzco Enterprises, Inc., No. 13-3505, 2015 WL 7760172, at *4 (D.N.J. Dec. 1, 2015).

The Court turns next to the three factors for assessing whether default judgment should be entered.  First, Plaintiffs have clearly been prejudiced by Danco's failure to retain new counsel and defend itself in this action.  Plaintiffs' original complaint in this action was filed over four years ago, and they have been forced to incur additional costs and have been unable to move forward with their claims in the over seventeen months in which Danco has failed to retain new counsel to defend itself.

Second, the Court finds that Defendant has failed to put forward any meritorious defenses which would caution against default judgment.  "A 'meritorious defense' is a defense which, if established at trial, would completely bar a plaintiff's recovery."  Teamsters Health & Welfare Fund of Philadelphia and Vicinity v. Dubin Paper Co., No. 11-7137 (JBS)(KMW), 2012 WL 3018062, at *4 (D.N.J. July 24, 2012) (citing Foy v. Dicks, 146 F.R.D. 113, 116 (E.D. Pa. 1993)).  While Danco's Answer to the SAC does assert several conclusory affirmative defenses, (see ECF No. 54 at 4), that is not sufficient to avoid default judgment: the "Defendant need not prove that he will ultimately prevail at trial, but he must demonstrate that he has a facially meritorious defense, not one based on mere denials and

10

conclusory language." Phase 3 Media, LLC v. Drake, 2018 WL
2723879, at *2 (D.N.J. June 6, 2018) (citing United States v.
$55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).

Danco's Answer does nothing more than deny the individual
factual allegations and raise boilerplate defenses in conclusory
language.  It has not put a separate theory of the case before
the Court, and has entirely failed to otherwise explain its
raised defenses or provide the Court with a basis by which to
assess or analyze them.  The Court therefore finds that this
factor further weighs in favor of entering default judgment.

As the third factor, the Third Circuit has explained that
"culpable conduct" is conduct that is "taken willfully or in bad
faith." Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123-
24 (3d Cir. 1983).  Here, Danco "itself has acted willfully by
failing to appoint new counsel in direct contravention of a
court order. [Danco] has proffered no explanation for its
failure to comply with [the Court's] Order to appoint new
counsel," and there is simply "no possibility that [Danco] was
unaware of its obligation to comply with the Order." Air Sea
Transport, Inc. v. Niki Intern., Inc., No. 2:12-6244 (KM), 2014
WL 3548628, at *4 (D.N.J. July 17, 2014).  Similarly, likely due
to its failure to obtain new counsel, Danco has failed to appear
at multiple status conferences scheduled by the Court.
Accordingly, the Court finds that Danco has acted in willful bad

faith here by failing to retain new counsel to represent it in
this action.

Therefore, since all three factors weigh in favor of
default judgment, the Court finds that Plaintiffs are entitled
to default judgment against Defendant Danco.

A. Damages

Having determined that Plaintiffs will be granted default
judgment on both of the claims asserted in the SAC, the Court
must next assess what damages they are therefore entitled to.
Upon entry of a default judgment, the only allegations in a
plaintiff's complaint not assumed to be true are those
pertaining to the amount of damages. Comdyne I, Inc. v. Corbin,
908 F.2d 1142, 1149 (3d Cir. 1990). Under Rule 55(b)(2), a
district court "may conduct such hearing or order such
references as it deems necessary and proper" in order "to
determine the amount of damages." However, if the damages are
for a "sum certain or for a sum which can by computation be made
certain," further evidentiary inquiry is not necessary. Fed. R.
Civ. P. 55(b)(1); Comdyne I, 908 F.2d at 1149.

Here, the Court has sufficient evidence to compute the
appropriate amount of damages. Plaintiffs' SAC sought an award
of all unpaid contributions, interest, liquidated damages,
reasonable attorneys' fees, and court costs. (Docket No. 49 at
6). In the event that an employer fails to make contributions

in violation of the collective bargaining agreement, then the
Court may award the plan (1) the unpaid contributions; (2)
interest on the unpaid contributions; (3) an amount equal to the
greater of the (a) interest on the unpaid contributions, or (b)
liquidated damages; (4) reasonable attorney's fees and costs of
the action; and (5) such other legal or equitable relief as the
court deems appropriate.  29 U.S.C. § 1132(g); Teamsters Health
and Welfare Fund of Philadelphia and Vicinity v. Dimedio Lime
Company, Civil No. 06-4519, 2007 WL 4276559 *2 (D.N.J. Nov. 30,
2007).

First, Plaintiffs here have sufficiently demonstrated,
through sworn affidavits and related evidence that Defendant
failed to remit contributions for the period of January 1, 2011
to December 31, 2013 totaling $65,664.13, (Docket No. 79-1 at 6,
Docket No. 79-3 at 32), failed to remit contributions for the
period of January 1, 2014 to December 31, 2016 totaling
$381,328.95, (Docket No. 79-1 at 6, Docket No. 79-3 at 40), and
finally failed to remit contributions for the period of January
1, 2018 to April 30, 2018 totaling $111,801.50.  (Docket No. 79-
1 at 6, Docket No. 79-3 at 51).

Plaintiffs further seek interest on the delinquent
contributions as well as liquidated damages as provided for by
their CBA.  Consistent with the CBA's Policy for Collection of
Delinquent Contributions, interest charges were assessed at a

rate of 2 percent above the prime rate charged by the Funds'
depository bank.  (Docket No. 79-3 at 12, Docket No. 79-3 at
16).   The Court has closely reviewed Plaintiffs' proof and
calculations, and finds that they have sufficiently demonstrated
their entitlement to $19,236.89 in interest on the delinquent
contributions for the period from September 1, 2011 to December
31, 2013, $73,122.03 in interest on the delinquent contributions
for the period from January 1, 2014 to December 31, 2016 totals,
and $19,334.45 in interest on the delinquent contributions for
the period from January 1, 2018 to April 30, 2018 totals.
(Docket No. 79-3 at 75.)  In total, the interest due on the
delinquent amounts comes to $111,693.37.

Similarly, the Court finds that Plaintiffs have
sufficiently demonstrated their entitlement to the liquidated
damages they seek.  Consistent with the CBA's Policy for
Collection of Delinquent Contributions (Docket No. 79-2 at 8-9,
Docket No. 79-3 at 12-13), liquidated damages were calculated as
20 percent of the amount due independent of interest.  For the
first, second, and third periods of delinquency, liquidated
damages provided for by the CBA were $11,713.57, $64.265.79, and
$22,360.30, respectively, totaling $98,339.66 altogether.
(Docket No. 79-3 at 75).

Plaintiffs have already received $60,000.00 from Hall
Construction Co., Inc. and $7,096.28 from D'Ambrosia's

14

bankruptcy proceedings, (Docket No. 79-1 at 6), and therefore those amounts must be deducted from Plaintiffs' total award.[2] With those deductions made, the Court finds that Plaintiffs are owed the $706,162.01 they seek from Danco under the CBA.

Finally, Plaintiffs also seek their reasonable attorney's fees and costs.  Plaintiffs assert that their fees totaled $34,891.50 and their costs totaled $769.25.  (Docket No. 79-2 at 10, Docket No. 79-3 at 77).  The Court has reviewed their certifications regarding attorneys' fees, and they demonstrate Plaintiffs' had four attorneys and two paralegals working on this case.  The four attorneys, Steven J. Bushinsky, W. Daniel Feehan, Mark E. Poist, and David T. Szawlewicz, each billed a rate of $175.00 per hour, and the two paralegals, Diane Harman and Jeanne Fitzgerald, each billed at rates of $70.00 per hour.  (Docket No. 79-2 at 10, Docket No. 79-3 at 77, Docket No. 79-3 at 79-144).  The Court finds that these rates are reasonable for

---

[2] In their calculations, Plaintiffs deducted the $7,096.28 that they collected from D'Ambrosia's bankruptcy to the earliest delinquency period, that covering the period from January 1, 2011 to December 31, 2013 before calculating interest and liquidated damages.  (Docket No. 79-2 at 7, Docket No. 79-3 at 75).  Plaintiffs deducted the $60,000 they received from Hall from the second delinquency period, that covering the period January 1, 2014 to December 31, 2016 and during which the "Caruso" (January 28, 2016 – August 31, 2016) and "Paterson" (January 1, 2016 and August 31, 2016) projects occurred before calculating interest and liquidated damages.  (Docket No. 79-2 at 7, Docket No. 19 at 10, Docket No. 19 at 12, Docket No. 79-3 at 75).

the work done here, and having reviewed Plaintiffs' counsels' billing records in depth, further finds that the time billed was reasonably expended on this litigation.  Finally, Defendant has sufficiently demonstrated its further entitlement to an additional $769.25 for costs incurred during this action.

Accordingly, Plaintiffs have demonstrated their entitlement to fees and costs in the amount of $35,660.75.  Plaintiffs were awarded $3,080.00 in attorney's fees by the Court on December 17, 2019 in response to a sanctions motion in this action, (Docket No. 65 at 4), which they claim were never paid by Defendant (Docket No. 79-2 at 4).  However, as the Court has already issued them an enforceable Order directing Plaintiff to pay them that sum, it will not repeat that Order here so as to avoid the possibility of duplication.  Accordingly, having subtracted the $3,080 in previously granted attorneys' fees for work performed in this litigation, the Court finds that Plaintiffs total attorneys' fees and costs to be awarded are $32,580.75.  The Court therefore finds that, altogether, Plaintiffs here are entitled to a a total judgment of $738,742.76.

**CONCLUSION**

For the reasons expressed above, Plaintiffs' motion for default judgment (Docket No. 79) will be granted, and judgment

16

will entered in favor of Plaintiffs against Defendant Danco

Painting, LLC in the amount of $738,742.76.


Date: August 19, 2021                    /s Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.